UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY L. MCDANIEL,

        Plaintiff,                Case No. 2:15-cv-12507
                                  Judge Paul D. Borman
v.                                   Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION TO DEEM MOOT PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DE 27), GRANT PLAINTIFF'S
AMENDED MOTION FOR SUMMARY JUDGMENT (DE 30) and DENY
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 34)**

**I.**    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DEEM MOOT** Plaintiff's August 29, 2016

motion for summary judgment (DE 27), **GRANT** Plaintiff's September 2, 2016

amended motion for summary judgment (DE 30), **DENY** Defendant's motion for

summary judgment (DE 34), and **REMAND** the matter to the Commissioner for

further proceedings consistent with this Report and Recommendation.

**II.**    **REPORT:**

    Plaintiff, Terry L. McDaniel, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for supplemental security income (SSI)

1

benefits.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 27), Plaintiff's amended motion for summary judgment (DE 30), the Commissioner's cross motion for summary judgment (DE 34), and the administrative record (DE 14).

### A.    Background

Plaintiff filed his application for SSI benefits on July 10, 2012, alleging that he has been disabled since May 10, 2012, at age 23.  (R. at 94-99.)  He alleges disability as a result of chronic neck, lower back, both knees and left wrist pain.  (R. at 109-118.)  His application was denied on November 26, 2012.  (R. at 39-46.)

On June 11, 2013, Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 53-55.)  ALJ Oksana Xenos held a hearing on February 26, 2014, at which Plaintiff represented himself and Vocational Expert (VE) Pauline McEachin testified.  (R. at 21-38.)  On April 24, 2014, ALJ Xenos determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 7-20.)

Plaintiff requested review of the hearing decision.  (R. at 5-6.)  On June 9, 2015, the Appeals Council denied Plaintiff's request for review.  (R. at 2-4.)  Thus, ALJ Xenos's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on July 15, 2015.  (DE 1.)  Although Plaintiff initiated this lawsuit *pro se*, attorney Eva I. Guerra filed an appearance on Plaintiff's behalf on March 31, 2016.  (DE 19.)[1]

## B.   Plaintiff's Medical History

In the field office disability report, Plaintiff alleges that he has been disabled since May 10, 2012, seemingly the result of being side-swiped by a vehicle while he was riding his bike.  (*See* R. at 106-108, 127-128, 137-139.)  His medical records span the period from May 10, 2012 to April 6, 2014.  (R. at 137-591.)  The approximately 455 pages of medical records are comprised of material from Detroit Receiving Hospital, Summit Medical Group / Summit Physician's Group, Cherry Hill Chiropractic / Elite Chiropratic,[2] Garden City Rehabilitation, and Dr. Mendelson of Livonia Ortho / Physical Therapy.  Notably, for various reasons, the SSA's March 10, 2014 requests for medical records from Dr. Mendelson and Cherry Hill Chiropractic – each for records from January 13, 2013 through the present - were fruitless.  (*See* R. at 581-585, 586-591.)

---

[1] On February 11, 2016, while Plaintiff was still representing himself, the Commissioner filed a motion to dismiss for failure to prosecute.  (DE 16.) Following Plaintiff's counsel's appearance and the entry of a report and recommendation, the Court denied the motion to dismiss for failure to prosecute as moot.  (DEs 19, 26 and 31.)

[2] Although the administrative record's table of contents labels Exhibit 3F as records from Cherry Hill Chiropratic, these records are from Elite Chiropratic, which may have been a predecessor to Cherry Hill Chiropractic.  (*See* R. at 26-27, 182-199.)

These medical records will be discussed as necessary below.

## C.     Hearing Testimony

ALJ Xenos conducted a hearing on February 26, 2014, during which Plaintiff and VE McEachin testified.  (*See* R. at 28-34, 34-38.)  Before taking Plaintiff's testimony, the ALJ discussed with him his right to be represented and documented his waiver of such right, and she discussed with Plaintiff his submission of documents for the record, as well as "additional documents or records [the SSA] need[ed] to get from doctors, hospitals and so on[,]" including specific mention of a January 24, 2014 knee surgery by Dr. Mendelson.  (R. at 23-24, 25-28.)

The ALJ's examination of Plaintiff primarily consisted of questions regarding his education, living arrangements, work history, his physical ailments (feet, back, head, knee, neck), and activities of daily living.  (R. at 28-34, 36-38.)  At the conclusion of the hearing, the ALJ stated, "**[w]e're going to request updates from all of the doctors and clinics and so on that you mentioned. When they come in you'll be receiving a copy of whatever they sent us.  And then I will, at that point, I will make a decision and issue a written decision . . . .**"  (R. at 37 (emphasis added).)  As the instant appeal presents a limited challenge to the ALJ's credibility determination, I will forego further summary of the testimony for the time being and only refer to it as necessary below.

### D.    The Administrative Decision[3]

ALJ Xenos rendered her decision on April 24, 2014.  (R. at 7-20.)  At **Step 1**, she determined that Plaintiff has never engaged in substantial gainful activity. (R. at 12.)  At **Step 2**, she determined that Plaintiff has the following severe impairments:  herniated and bulging discs in the spine, radiculopathy, right knee and right shoulder arthralgia, a right ulnar tear, and obesity.  (R. at 12.)  At **Step 3**, she determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (R. at 12-13.)  At **Step 4**, the ALJ determined that Plaintiff has the

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4); *see also* 20 C.F.R. § 416.920.  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also* 20 C.F.R. 416.920; *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

RFC to perform the exertional limitations of light work, with some further postural and environmental limitations, as well as an ability to "alternate positions between sitting and standing at will at the work station[,]" and further found that Plaintiff has no past relevant work.  (R. at 13-15.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 15-16.)

###  E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.    Analysis

In his amended motion for summary judgment, Plaintiff argues that the ALJ

erred:  **(1)** at Step 2 by failing to find that Plaintiff's headaches, left knee myalgias,

temporomandibular joint (TMJ) problems, anxiety and depression were severe

impairments; **(2)** at Step 3 by failing to find that Plaintiff's impairments or

combination of impairments met or medically equaled Listing 1.04 ("Disorders of

the spine"); and **(3)** by failing to follow the SSA's own policies regarding an

unrepresented plaintiff, namely the duty to develop the administrative record and

ensure a fair hearing.  (DE 30 at 22-34.)  The Commissioner argues for affirmance,

asserting that substantial evidence supports the ALJ's decision.  (DE 34 at 9-18.)

### 1.    The ALJ's Step 2 determination should be affirmed.

Plaintiff's Step 2 argument takes issue with the ALJ's alleged failure to

mention Plaintiff's "significant headaches," left knee arthralgia, TMJ problems,

anxiety and depression, each of which, Plaintiff claims, "contributes to [his]

inability to work."  (DE 30 at 23.)  In support of his argument, Plaintiff provides a

lengthy list of citations to these conditions in the administrative records.  (DE 30 at

23-25.)  Plaintiff claims the findings regarding these conditions are more than *de*

*minimis*, would affect his ability to do "basic work activities[,]" and would be

"vocationally limiting;" thus, these impairments should have been found "severe."

(DE 30 at 25.)

I find no error in the ALJ's Step 2 determination.  First, to the extent Plaintiff argues that the ALJ should have determined that these conditions were "severe," the argument is "misguided."  *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).  The ALJ having found *some* severe impairments – here herniated and bulging discs in the spine, radiculopathy, right knee and right shoulder arthralgia, a right ulnar tear, and obesity (R. at 12) – Plaintiff "cleared step two of the analysis[,]" and "[t]his caused the ALJ to consider [Plaintiff's] severe and nonsevere impairments in the remaining steps of the sequential analysis." *Anthony*, 266 F.App'x at 457.  In other words, "[t]he fact that some of [Plaintiff's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Id.*

Second, to the extent Plaintiff alleges that the ALJ did not mention his headaches, left knee arthralgia, TMJ problems or anxiety and depression, the ALJ did state that she considered "all the evidence," "the entire record," and "the entire case record."  (R. at 10, 12, 13.)  Moreover, an ALJ's failure to directly address each piece of evidence is not, alone, a basis for remand.  *See Kornecky v. Commissioner of Social Security,* 167 F.App'x 496, 507-508 (6th Cir. 2006) ("While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that:  '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of

evidence submitted by a party.'") (quoting *Loral Defense Systems–Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir.1999)).

Third, while Plaintiff provides a lengthy list of citations to these conditions in the administrative records (*see* DE 30 at 23-25), "[t]he mere diagnosis of [a condition], of course, says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). The Court's own review of the record reveals:

- Several references to **headaches**, such as:

  - May 2012 complaint of headaches and apparent diagnoses of headaches by Elite Chiropractic (R. at 182, 195, 197; *see also* R. at 198)

  - Subjective complaints of headaches to Bernard E. Hughey, III, of Cherry Hill Chiropractic, dated May 2012 through July 2012 (R. at 202-216, 225, 227-228),

  - Dr. Jankowski's July 12, 2012 plan for Plaintiff to "undergo VNG study due to his headaches[,]" (R. at 156-158, 322-324)

  - Dr. Jankowski's April 2013 assessment of "intractable headaches," and June 2013 treatment plan of "Tx360 nasal treatment for ongoing headaches" (R. at 302, 304)

  - June 2012 MRI of the brain by Dr. Paley at Horizon Imaging (R. at 164, 189, 336), as well as April 2013 and May 2013 MiRx Headache treatments by Dr. Jankowski (R. at 329, 330)[4]

---

[4] However, there was a June 12, 2012 instance of "the patient denies headaches . . . ." (R. at 159, 326.)

- Dr. Jankowski's October and November 2013 diagnoses of **left knee arthralgia**, including a musculoskeletal exam revealing "some audible joint clicking," plans to have left knee MRIs and/or a planned left knee steroid injection (R. at 289, 291; *see also* R. at 306)

- Dr. Jankowski's July 2012 diagnosis of left-sided **TMJ** with cervicalgia (R. at 158, 323; *see also* R. at 156, 322)

- A June 2012 Gabadone prescription for "sleep dys/**anxiety**," Dr. Jankowski's July 2012 diagnosis of "anxiety disorder versus PTSD," and Dr. Jankowski's November 2013 review of "positive anxiety" (R. at 165, 432, 158, 323, 288; *see also* R. at 156-157, 322, 324)

- A June 2012 Sentra prescription for "sleep dys/**depression**" (R. at 165, 432)[5]

(DE 30 at 23-25.)  Plaintiff "bears the burden at step two of demonstrating that her impairment or combination of impairments is severe." *Albadiry v. Colvin*, No. 3:13-0840, 2014 WL 4533349, at *9 (M.D. Tenn. Sept. 11, 2014), *report and recommendation adopted sub nom. Albadiry v. Soc. Sec. Admin.*, No. CIV. 3:13-0840, 2014 WL 4960949 (M.D. Tenn. Sept. 30, 2014) (referencing *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir.2007)).  As the Commissioner notes, Plaintiff's citations are too "brief and cursory" to sustain his burden of showing an "impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities . . . ."  20 C.F.R. §§

---

[5] However, in several instances, it was noted that Plaintiff "[d]enies any depression or suicidal ideation."  (*See* R. at 156, 290, 293, 295, 297, 299, 301, 303, 305, 307, 310, 312, 314, 316, 318, 320, 322.)

404.1520(c), 416.920(c).  (*See* DE 30 at 23-25, DE 34 at 11.)  *See also Colvin*, 475

F.3d at 730 ("[P]laintiff must show that [he] suffers from a 'severe impairment' in

order to warrant a finding of disability.").  Moreover, even if Plaintiff's more

detailed descriptions – such as those of Dr. Jankowski's dated July 2012 through

November 2013 - met his Step 2 burden, Plaintiff has the burden to successfully

challenge the ALJ's Step 4 RFC determination, *see Walters v. Comm'r of Soc. Sec.*,

127 F.3d 525, 529 (6th Cir. 1997), and Plaintiff's Step 2 argument (DE 30 at 22-

26) does not explain how the ALJ's Step 4 RFC determination (light work with

further postural and environmental, and a sit/stand at will option) inadequately

addresses his impairments.

  Finally, Plaintiff argues that the ALJ "did not have substantial evidence to

have ignored the combination of ***all*** of the claimant's impairments."  (DE 30 at 26

(emphasis in original).)  To be sure, "[d]isability may be established by a claimant

suffering from a variety of medical problems no one of which might be sufficiently

disabling to prevent substantial gainful employment, but when taken together have

that result."  *Mowery v. Heckler*, 771 F.2d 966, 971 (6th Cir. 1985) (citing *Hurst v.

Schweiker,* 725 F.2d 53 (6th Cir.1984) and *Allen v. Califano,* 613 F.2d 139 (6th

Cir.1980)).  However, at Step 3, the ALJ in this case concluded that Plaintiff does

not have "an impairment or *combination of impairments* that meets or medically

equals the severity of one of the listed impairments . . ." and further noted that,

while Plaintiff is overweight, "*even in combination with his musculoskeletal impairments*, he can still do a significant range of light work . . . ."  (R. at 12, 13 (emphases added).)  The ALJ thus did not "ignore" the combination "of all of Plaintiff's impairments," and the Court should not agree with Plaintiff that the ALJ's failure to designate certain impairments as "severe" at Step 2 necessarily means the ALJ "clearly did not consider these impairments when reviewing how they would impact the claimant, or his ability to work."  (DE 30 at 26.)

> **2.    Substantial evidence supports the ALJ's conclusion that Plaintiff's impairments do not meet or medically equal Listing 1.04(A).**

"[I]t is Plaintiff's burden at step 3 of the sequential analysis to prove that she meets or equals the listing's diagnostic description and one of the four severity criteria specified in parts A, B, C, or D."  *Franklin v. Comm'r of Soc. Sec.*, No. 1:15-CV-463, 2016 WL 158589, at *3 (W.D. Mich. Jan. 13, 2016); *see also Helmker v. Comm'r of Soc. Sec.*, No. 1:14-CV-0902, 2015 WL 7721225, at *5 (W.D. Mich. Nov. 30, 2015).  At this stage, Plaintiff particularly challenges the ALJ's failure to conclude that his impairments *meet* and/or at least *equal* Subsection A of musculoskeletal Listing 1.04, which provides:

> ***Disorders of the spine*** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:

> A.      Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

Listing 1.04(A).  For the following reasons, the Court should affirm the ALJ's Step 3 determination as it relates to Listing 1.04(A).

### a.      Meeting Listing 1.04(A)

As to "*meeting*" Listing 1.04(A), substantial evidence supports the ALJ's conclusion that there is no evidence of the requisite nerve root compression.  To this end, Plaintiff directs the Court's attention to his May 30, 2012 MRIs of the cervical and lumbar-sacral spine, as well as several other records that allegedly establish "neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (weakness) accompanied by sensory loss along with positive straight leg raising test both sitting and supine."  The Court notes the following examples:

- The May 30, 2012 cervical spine MRI and lumbar-sacral spine MRI revealed "disc herniation" and/or "disc bulges" (R. at 162-163, 190-191, 347-348)

- Decreased range of motion in the back and right shoulder (R. at 158, 160, 323; *see also* R. at 327)

- Weakness in the arms, shoulders, legs and thighs, and a positive "foraminal compression" orthopedic test (R. 192, 198)

- Positive or provocative straight leg raising tests (R. at 158, 291, 296, 298, 302, 304, 306, 308, 313, 315, 317, 319, 321, 323; *but see* R. at 300)

- Notes from 2012 and 2013 indicating diminished sensation to touch in the right lower and/or right upper extremities (R. at 302, 308)

- On May 10, 2013, "some diminished sensation to touch and strength in his bilateral lower extremities in the motor and *nerve root* units that innervate LS-81. . ." (R. at 298 (emphasis added))

(*See also* DE 30 at 27-28.)  In addition, the Court acknowledges January 2013 notes of decreased strength, motor return and muscle response.  (R. at 487, 489, 491, 493, 495, 498.)

However, the ALJ opened her Step 3 discussion with the following statement:  "With reference to the claimant's back and neck, *there is no medical evidence of nerve root compression with a motor loss* [*see* Listing 1.04(A)], or spinal arachnoiditis [*see* Listing 1.04(B)], or an inability to ambulate effectively [*see* Listing 1.04(C)], as defined in section l.OOB2b of the 'Listings.'"  (R. at 12 (emphasis added).)  Indeed, Plaintiff's May 20, 2012 spinal x-rays revealed "[n]o acute fracture, compression deformity or subluxation in the thoracic and lumbar spine[,]" and a same-day cervical spine CT revealed "[n]o evidence of fracture dislocation[,]" and "[m]ild degenerative disc disease at C4-C5."  (R. at 148, 150, 152.)  Moreover, the May 30, 2012 lumbar-sacral spine MRI found that "[c]onus and descending nerve roots of cauda equine appear normal."  (R. at 163, 190, 348.)

Therefore, substantial evidence supports the ALJ's conclusion that there is no evidence of the requisite nerve root compression.[6]

### b.    Medically equaling Listing 1.04(A)

Plaintiff contends that the ALJ did not provide an explanation "as to how [she] determined that the Listings were not 'equaled[,]' if not specifically 'met.'" (DE 30 at 30.)  However, Plaintiff does not successfully challenge the ALJ's Step 3 finding that Plaintiff does not have an impairment or combination of impairments that "*medically equals*" Listing 1.04(A).  (R. at 12.)

### i.    Obesity and SSR 02-1p

Plaintiff argues that the ALJ did not assess his impairments *in combination with* his obesity.  (DE 30 at 33.)  The SSA's evaluation of obesity is guided by SSR 02-1p, which provides in part as to Step 3:

> We will also find that a listing is met if there is an impairment that, *in combination with obesity*, meets the requirements of a listing.  For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing.  This is especially true of musculoskeletal, respiratory, and cardiovascular impairments.  It may

---

[6] Also, within her Step 4 RFC determination, the ALJ stated:  "The undersigned is fully aware that MRIs have shown bulging discs and mild canal stenosis in the cervical spine and a herniated disc, bulging discs, and grade one retrolisthesis in the lumbar spine (see Ex. 8F [R. at 347-348; *see also* R. at 162-163, 190-191]). These positive findings are the principal reason why the undersigned limited the claimant to light work with the sit-stand option and the postural restrictions."  (R. at 15.)  Thus, the ALJ expressly took into consideration the May 30, 2012 spinal MRIs.

> also be true for other coexisting or related impairments, including
> mental disorders.

SSR 02-1P (S.S.A. Sept. 12, 2002) (emphasis added).  However, this same section

of the rule also provides:  "we will not make assumptions about the severity or

functional effects of obesity combined with other impairments."  *Id*.  "Obesity *in*

*combination with* another impairment may or may not increase the severity or

functional limitations of the other impairment.  We will evaluate each case based

on the information in the case record."  *Id*. (emphasis added).

In this case, the ALJ adequately evaluated Plaintiff's obesity.  At Step 2, the

ALJ did find obesity among Plaintiff's severe impairments, and, at Step 3, the ALJ

noted:  "Although the claimant is overweight, even in combination with his

musculoskeletal impairments, he can still do a significant range of light work . . ."[7]

and "despite weighing almost 300 pounds, the claimant is 72 inches in height."  (R.

at 12, 13).  Thus, even taking into consideration Plaintiff's argument that the ALJ

-------

[7] As to this statement, the ALJ specifically referenced the following section of the
listings:  "Obesity is a medically determinable impairment that is often associated
with disturbance of the musculoskeletal system, and disturbance of this system can
be a major cause of disability in individuals with obesity.  The combined effects of
obesity with musculoskeletal impairments can be greater than the effects of each of
the impairments considered separately.  Therefore, when determining whether an
individual with obesity has a listing-level impairment or combination of
impairments, and when assessing a claim at other steps of the sequential evaluation
process, including when assessing an individual's residual functional capacity,
adjudicators must consider any additional and cumulative effects of obesity."
Listing 1.00Q ("Effects of obesity.")

minimized his body mass index (BMI) of 40.7 (which the Centers for Disease

Control and Prevention classifies as "obese"[8] and the SSA classifies as "extreme

obesity"[9]), it remains that the ALJ "explain[ed] how [she] reached [her]

conclusions on whether obesity caused any physical or mental limitations."  SSR

02-1P (S.S.A. Sept. 12, 2002).[10]

One further note.  Plaintiff contends that the ALJ should have discussed "the

effect of [his] obesity as to [his] condition meeting the Listings . . ."  (DE 30 at 30.)

The ALJ did so when she acknowledged that Plaintiff is overweight, cited his

weight and height, and concluded that he could still do a significant range of light

---

[8] *See also* https://www.cdc.gov, "Adult BMI Calculator."

[9] "The Clinical Guidelines recognize three levels of obesity.  Level I includes BMIs of 30.0-34.9.  Level II includes BMIs of 35.0-39.9.  Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40.  These levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss."  SSR 02-1P (S.S.A. Sept. 12, 2002).

[10] Plaintiff specifically points to Dr. Jankowski's June 12, 2012 and October 16, 2012 plans for Plaintiff to follow up with his primary care physician for weight loss management, and the Court acknowledges Dr. Jankowski's June 12, 2012 note that Plaintiff was "moderately overweight," at *6 feet tall (72 inches)* with weight of *206 pounds* and October 16, 2012 note that Plaintiff was "well appearing morbidly obese" at *5 feet tall* (or 60 inches) and *265 pounds*.  (DE 30 at 29-30, R. at 159-161, 316-317, 326-328.)  However, these do not change the foregoing conclusion.  At the February 26, 2014 hearing, Plaintiff testified that he weighed 290 pounds and was 5'11'' (71 inches) tall, and the ALJ's decision was based upon a weight of "almost 300 pounds" and "72 inches [6 feet] in height."  (R. at 13, 28.)  Therefore, the ALJ's decision was based on measurements more severe than those that Plaintiff cites.

work "even in combination with his musculoskeletal impairments . . . ."  (R. at 13.)[11]

### ii.    Medical expert opinion and SSR 96-6p

Plaintiff also argues that the ALJ "did not have a medical expert's testimony, either written or in person" *as to equivalency.*  (*See* DE 30 at 30-31; *see also* DE at 33.)  In response, the Commissioner properly points to the November 26, 2012 opinion of state agency medical consultant, Tariq Mahmood, M.D., who concluded that Plaintiff had exertional and postural limitations and who, in arriving at that conclusion, specifically referenced Plaintiff's May 30, 2012 spinal MRIs, as well as Plaintiff's June 28, 2012 brain MRI.  (DE 30 at 30-31, DE 34 at 12-13; R. at 39, 40-46, 162-164, 189-191, 336, 347-348.)

Dr. Mahmood's opinion constitutes an expert opinion on the issue of "medical equivalence to an impairment in the listing of impairments[,]" as a related portion of the rule provides:

> The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) .
> . . ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of *medical equivalence* at the initial and reconsideration levels of administrative review.

---

[11] It is true that "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment."  SSR 02-1P (S.S.A. Sept. 12, 2002).  However, Plaintiff is not challenging the ALJ's Step 4 RFC determination.

S.S.R. 96-6p, 1996 WL 374180, *3 (July 2, 1996) (emphasis added).  Moreover,

while "[a]dministrative law judges are not bound by any findings made by State

agency medical or psychological consultants, or other program physicians or

psychologists[,]" state agency medical and psychological consultants "are highly

qualified physicians . . . who are also *experts* in Social Security disability

evaluation."   20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (emphasis added).

Therefore, ALJs "must consider findings and other opinions of State agency

medical and psychological consultants and other program physicians,

psychologists, and other medical specialists as opinion evidence, except for the

ultimate determination about whether you are disabled . . . ."  *Id.*  As such,

Plaintiff's argument that Dr. Mahmood's November 26, 2012 consideration of

Listing 1.02 ("*Major dysfunction of a joint(s) (due to any cause)*") does not

constitute "the judgment of a physician . . . designated by the Commissioner on the

issue of equivalence . . ." which "must be received into the record as expert

opinion evidence and given appropriate weight[,]" is unavailing.[12]  (R. at 43, DE

30 at 30-31.)

---

[12] As the ALJ pointed out, the administrative record contains a multitude of
"Disability Certificates."  (R. at 15; *see also* R. at 179, 180 [Ex. 2F], 230, 232 [Ex.
5F], R. at 362, 364, 365, 368, 369, 372, 375, 378, 380, 381, 383, 386 [Ex. 9F], R.
at 390, 391, 394, 396, 397 [Ex. 10F], R. at 501, 503, 505, 507, 509, 515 [Ex. 14F],
R. at 518, 520, 522, 524, 527, 529, 351 [Ex. 15F].)  However, any of these signed
by Emmitt Spradlin, N.P., would constitute an opinion from an "other source," not
an "acceptable medical source."  *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

### c.     Conclusion

Finally, Plaintiff claims the ALJ did not "make an 'equivalency' finding," or

"conduct the necessary equivalency analysis . . . ."  (DE 30 at 30-31.)  Yet, the ALJ

expressly stated that Plaintiff "does not have an impairment or combination of

impairments that meets or *medically equals* the severity of one of the listed

impairments . . . ."  (R. at 12-13 (emphasis added); *see also* DE 34 at 14-15.)  As

the foregoing paragraphs illustrate, Plaintiff has not successfully challenged the

ALJ's Step 3 "meets" or "medically equals" conclusions.  These should, therefore,

be affirmed as to Listing 1.04(A).

### 3.     The ALJ did not fully develop the record as required by 20 C.F.R. §§ 404.1512(d) and 416.912(d).

"The burden of providing a complete record, defined as evidence complete

and detailed enough to enable the [Commissioner] to make a disability

determination, rests with the claimant."  *Landsaw v. Sec'y of Health & Hum.*

*Servs.*, 803 F.2d 211, 214 (6th Cir. 1986); *see also Griffin v. Comm'r of Soc. Sec.*,

No. 13-11089, 2014 WL 2864953, at *6 (E.D. Mich. Mar. 31, 2014) *report and*

---

Thus, while the ALJ considered these opinions, she did not give them as much weight as if they had been issued by a medical doctor.  (R. at 15.)  Moreover, the ALJ did not give "controlling weight" to disability conclusions from Dr. Jankowski – an "acceptable medical source" – as "[t]here is too much conflicting evidence that casts serious question on the true severity of the claimant's alleged symptoms[,]" such as the credibility of Plaintiff's alleged symptoms and unremarkable findings.  (*See* R. at 15.)

*recommendation adopted*, No. 13-11089, 2014 WL 2864993 (E.D. Mich. June 24, 2014) ("The ALJ is not required to 'ferret out' additional records that the claimant neglected to procure."). However, an ALJ has a "special, heightened duty to develop the record" in special circumstances, such as when the claimant is without counsel, "is not capable of presenting an effective case, and is unfamiliar with hearing procedures." *Nabours v. Comm'r of Soc. Sec.*, 50 F. App'x 272, 275 (6th Cir. 2002).[13] Absent such circumstances, "the claimant bears the ultimate burden of proving disability." *Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008).

"The determination whether the ALJ has fulfilled that [special duty] . . . must be made on a case by case basis." *Weissmiller v. Sec'y of Health & Human Servs.*, No. 84-3480, 1986 WL 16374, *2 (6th Cir. 1986) (citing *Lashley*, 708 F.2d at 1052). As an initial matter, ALJ Xenos opened the February 26, 2014 hearing by expressly discussing with Plaintiff his decision to proceed on his own, including his right to be represented by counsel or another representative and the advice that

---

[13] *See also Allison v. Apfel*, No. 99-4090, 2000 WL 1276950, *5 (6th Cir. Aug. 30, 2000) ("the ALJ has a 'special duty' to develop the record and to ensure a fair hearing to the claimant when the claimant is unrepresented by counsel.") (citing *Duncan v. Secretary of Health & Human Servs.,* 801 F.2d 847, 856 (6th Cir.1986); *Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1051-52 (6th Cir. 1983)); *D'Angelo v. Comm'r of Soc. Sec.*, 475 F. Supp. 2d 716, 722 (W.D. Mich. 2007) ("Because plaintiff was unrepresented by counsel, the ALJ had a special duty to scrupulously and conscientiously explore all the relevant facts.") (referencing *Lashley,* 708 F.2d at 1051–52).

an attorney can "make sure your record is complete," so that the ALJ has before

her "all of the records from hospitals, doctors and clinics concerning [him], all of

which [she] must see in order to make the right decision in [his] case."  (R. at 23-

24.)  Thereafter, Plaintiff decided to represent himself and executed a "waiver of

right to representation."  (R. at 24, 93.)

Next, and before she took Plaintiff's testimony, the ALJ engaged in

discussion about the record.  Specifically, she received certain documents which

Plaintiff sought to make part of the record, and she reviewed with him additional

documents or records that Plaintiff thought the SSA needed to secure – seemingly

documents from Summit Medical Group / Summit Physician's Group, Garden City

Rehabilitation, Elite Chiropractic / Cherry Hill Chiropractic, and Dr. Mendelson

(who allegedly performed Plaintiff's January 24, 2014 knee surgery).  (R. at 25-

28.)  Finally, before taking testimony, the ALJ admitted Exhibits A, B, D, E and F

into evidence.  (R. at 28.)

Although the contents of the five exhibits received into evidence on

February 26, 2014 are unclear, by the time of the April 24, 2014 decision, there

were **19 exhibits** in Plaintiff's medical records:  **one** from Detroit Receiving

Hospital (R. 137-155 [Ex. 1F]), **seven** from Summit Medical Group / Summer

Physician's Group (R. at 156-181 [Ex. 2F], 287-477 [Exs. 7F, 8F, 9F, 10F, 11F,

12F]), **three** from Cherry Hill Chiropractic (R. at 182-229 [Ex. 3F, 4F], 586-591

[Ex. 19F]), **seven** from Garden City Rehabilitation (R. at 230-286 [Exs. 5F-6F], R. at 478-580 [Exs. 13F, 14F, 15F, 16F, 17F] and **one** from Dr. Mendelson of Livonia Ortho / Physical Therapy (R. at 581-585 [Ex. 18F]).  (*See also* R. at 19-20.)

To be sure, Plaintiff seems to comment on his ability to represent himself, as he asks the Court to remember that he suffered a head injury as a result of the May 10, 2012 accident (*see* R. at 137-139) and that he has often been noted to be a "poor" historian, including an October 7, 2013 notation that Plaintiff "presents with his girlfriend who helps assisting in gathering history of present illness."  (*See* DE 30 at 31; R. at 158, 160, 288, 290-291, 293, 297, 307, 314, 323, 327).[14] However, as this Court has previously noted, "[s]imply appearing unrepresented at the hearing is not sufficient to constitute a special circumstance requiring a heightened duty to develop the record."  *Depweg v. Comm'r of Soc. Sec.*, No. 14-11705, 2015 WL 5014361, at *8 (E.D. Mich. Aug. 24, 2015) (Rosen, C.J., adopting report and recommendation of Patti, M.J.) (referencing *Wilson,* 280 F.App'x at 459 (holding that there was no heightened scrutiny where the claimant appeared at the hearing unrepresented but the transcript "disclose[d] her grasp of the proceedings and the adequacy of her case presentation to the ALJ.")).

However, the crux of Plaintiff's "developing the record" argument is that: (a) he mentioned the January 24, 2014 knee surgery at the February 26, 2014

---

[14] (*But see* R. at 295, 299, 301, 303, 305, 317, 318, 321.)

hearing – describing the surgeon's name and location "as best he could;" (b) the

SSA Hearing Office Director sought records from Dr. Mendelson of Livonia

Orthopedics / Physical Therapy; but, (c) it does not appear that anyone contacted

Plaintiff when the SSA received the "no records found" response.  (DE 30 at 31-

34, R. at 27, 581-585.)  Plaintiff correctly contends that the administrative record is

devoid of records from the January 24, 2014 knee surgery and argues that such

records "would have further corroborated the seriousness of his knee problems . . .

."  (DE 30 at 31.)

I acknowledge that, to a certain extent, the ALJ addressed Plaintiff's knee

problems.  For example, the ALJ concluded at Step 2 that Plaintiff's severe

impairments included right knee arthralgia.  Then, in her consideration of Listing

1.00B2b at Step 3, she referenced the right knee arthralgia but observed that "the

record does not establish an inability to ambulate effectively . . . ."  (R. at 12.)

Moreover, the ALJ's Step 4 RFC determination contained the postural limitation of

only occasional kneeling.  (R. at 13.)

That being said, the Court should conclude that the ALJ did not satisfy her

duty to develop the administrative record.  The SSA regulation regarding evidence

provides that:

> Before we make a determination that you are not disabled, we will
> develop your complete medical history for at least the 12 months
> preceding the month in which you file your application unless there is
> a reason to believe that development of an earlier period is necessary

> or unless you say that your disability began less than 12 months
> before you filed your application. ***We will make every reasonable
> effort to help you get medical reports from your own medical
> sources when you give us permission to request the reports.***

20 C.F.R. §§ 404.1512(d), 416.912(d) (emphasis added). During the ALJ's

discussion with Plaintiff about records, she asked him to sign an authorization and

told him, "we'll fill out the rest of the information ourselves." (R. at 25.)

Moreover, Plaintiff identified the date of his knee surgery as January 24, 2014, and

the ALJ stated, "[w]e will get that record also." (R. at 27-28.) That same day,

Plaintiff executed authorizations to disclose information to the SSA as to Dr.

Mendelson (R. at 581-585 [Ex. 18F]) and Cherry Hill Chiropractic (R. at 586-591

[Ex. 19F]).

Despite 20 C.F.R. §§ 404.1512(d) and 416.912(d)'s assurance that the SSA

"will make every reasonable effort" to assist a claimant in procuring records, it

appears the SSA did not follow up once it received the response circling "physical

therapy" and noting that "no records [were] found[.]" (R. at 581.) "Every

reasonable effort" means that the SSA:

> . . . will make an initial request for evidence from your medical source
> and, at any time between 10 and 20 calendar days after the initial
> request, if the evidence has not been received, we will make one
> followup request to obtain the medical evidence necessary to make a
> determination. The medical source will have a minimum of 10
> calendar days from the date of our followup request to reply, unless
> our experience with that source indicates that a longer period is
> advisable in a particular case.

20 C.F.R. §§ 404.1512(d)(1), 416.912(d)(1). Plaintiff points out that the request was sent to 14555 Levan, Ste #215, Livonia, MI 48154, while the actual address for the Livonia Orthopedics office of MendelsonKornblum (Orthopedic & Spine Specialists) is 36622 Five Mile Road, Suite 101, Livonia, MI 48154. (R. at 581, DE 30 at 32.)[15] Even if this address was not obvious to the SSA, it should have followed up with Plaintiff given his detailed description of the date of the surgery, the doctor's name and the approximate location of the physician's office. This would appear to be especially important where Plaintiff had previously explained to Dr. Jankowski that he is a poor historian, requires assistance gathering history and where the administrative record includes emergency treatment notes which note Plaintiff's report that he "hit his head." (R. at 137-139, 158, 160, 288-291.) Thus, the ALJ agreed to procure more information for the record and, seemingly without "reasonable effort," failed to do so. *See Strang v. Comm'r of Soc. Sec.*, No. 14-1610, 2015 WL 2056098, at *6 (6th Cir. May 14, 2015) (noting that where

---

[15] Although the Commissioner correctly maintains that Plaintiff – now represented by counsel – has not proffered evidence from Dr. Mendelson, the Commissioner incorrectly maintains that Plaintiff has not "presented any specific additional facts relating to Dr. Mendelson." (DE 34 at 17 n.8.) In fact, Plaintiff via counsel has identified the physician's office as MendelsonKornblum in Livonia, Michigan. (DE 38 at 32.) Even if, as the government suggests, Dr. Mendelson's office could have moved between the time of the SSA's March 10, 2014 request (R. at 581) and the time he filed his September 2, 2016 brief (DE 30), it remains that, had the SSA followed up with Plaintiff, it may have secured identifying information to which a new request for records of the January 24, 2014 surgery could have been sent.

an ALJ agrees to procure more information and fails to do so, the lack of documentation is "undoubtedly prejudicial").

The Court recognizes, as the Commissioner points out, that a case can be remanded "for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is *new* and *material*, and that there was *good cause* for not presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993) (emphases added)). The Court further recognizes that "a significant omission is usually required before this court will find that the Secretary failed to assist *pro se* claimants in developing the record fully and fairly." *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994). (*See also* DE 34 at 17.) Moreover, "[a]s long as there is sufficient evidence in the record for him to make a decision regarding the claimant's disability, it is within the discretion of an ALJ to close the record." *Penn v. Astrue*, No. 1:10CV1885, 2012 WL 646057, at *8 (N.D. Ohio Feb. 28, 2012) (referencing *Dotson v. Dotson Coal Co.,* No. 89–3157, 1990 WL 4056, at *1 (6th Cir. Jan.23, 1990)); *see also Mansfield*, 2015 WL 2236253, at *11.

However, Plaintiff has shown a "significant omission," namely that the administrative record is devoid of records from his January 24, 2014 knee surgery. (DE 30 at 31.) "Where there are obvious gaps in the record, the ALJ has the duty to develop the administrative record with respect to the missing evidence."

*Kendall v. Astrue,* No. CIV.A. 2:10–263–DCR, 2011 WL 4388794, at *5 (E.D. Ky. Sept.20, 2011) (referencing *Sims v. Apfel,* 530 U.S. 103, 110-111 (2000)); *see also Mansfield v. Comm'r of Soc. Sec.*, No. 14-11766, 2015 WL 2236253, at *11 (E.D. Mich. May 12, 2015) (Tarnow, J., *adopting report and recommendation of* Stafford, M.J.).  Here, the gap in the record and its significance is made all the more obvious by that ALJ's own assurance that she would acquire the evidence in question, an assurance upon which Plaintiff was reasonable to rely.

Moreover, Plaintiff has convincingly explained how this is prejudicial to the ALJ's Step 3 determination that he did not meet Listing 1.02 ("*Major dysfunction of a joint(s) (due to any cause)*").  First, he contends that records of the knee surgery would have "further corroborated the seriousness of his knee problems . . . ."  (DE 30 at 31.)  Second, Plaintiff suspects that the ALJ "may have used the 'no records found' notation to further discredit [Plaintiff's] credibility relative to his testimony that he actually had knee surgery, and possibly not believing that he told the truth."  (DE 30 at 33.)   Third, Plaintiff contends that those surgical records "would have assisted the Commissioner [in] recognizing that Listing [1.02(A)] was, indeed, met."  (DE 30 at 33.)[16]  *Compare Duncan v. Sec'y of Health & Hum.*

---

[16] While Plaintiff refers in his brief to "Listing 1.04(A)," (*see* DE 30 at 33), Listing 1.04 concerns "disorders of the spine."  Instead, given that the missing records at issue relate to Plaintiff's knee surgery, the Court assumes that Plaintiff intended to refer to Listing 1.02, which concerns "major dysfunction of a joint(s) (due to any

*Servs.*, 801 F. 2d 847, 856 (6th Cir. 1986) (holding that the claimant received a full and fair hearing, although it was short and he was unrepresented, where he did not provide "what possible further information [that] could have been brought forth at the hearing which would have enhanced a determination of disability.").  Finally, the Court acknowledges the possibility that the absence of the surgical records had a bearing on the ALJ's Step 4 RFC determination, such as the exertional or postural limitations.

### G.    Conclusion

I conclude that:  **(a)** the ALJ's Step 2 determination should be affirmed (Section II.F.1); **(b)** the ALJ's Step 3 determination should be affirmed as to Listing 1.04(A) but may be revisited on remand if Plaintiff can demonstrate that the knee surgery records in any way apply to this listing (Section II.F.2); and **(c)** the ALJ did not fully develop the record as required by 20 C.F.R. §§ 404.1512(d) and 416.912(d) (Section II.F.3).  Accordingly, it is **RECOMMENDED** that the Court **DEEM MOOT** Plaintiff's motion for summary judgment (DE 27), **GRANT** Plaintiff's amended motion for summary judgment (DE 30), **DENY** Defendant's motion for summary judgment (DE 34), and **REMAND** the case pursuant to 42 U.S.C. § 405(g) to the Commissioner for further proceedings consistent with this Report and Recommendation.  Upon remand, with respect to the issue of whether

---

cause)[,]" unless he perhaps intends to show that the knee condition exacerbated the severity of his spine condition.

Plaintiff's impairments medically equaled a Listing impairment, the ALJ should be directed to **(a)** further develop the record in accordance with 20 C.F.R. §§ 404.1512(d) and 416.912(d), including, but not limited to, obtaining the records from Plaintiff's January 24, 2014 knee surgery (and ascertaining the proper address to which the request should be made); **(b)** perform a new Step 3 analysis and finding as to Listing 1.02(A) in light thereof; and **(c)** re-evaluate the Step 4 RFC and Step 5 findings as necessary.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: February 7, 2017             s/Anthony P. Patti
                                    Anthony P. Patti
                                    UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on February 7, 2017, electronically and/or by U.S. Mail.

                                    s/Michael Williams
                                    Case Manager for the
                                    Honorable Anthony P. Patti